871 F.2d 1077
 35 Cont.Cas.Fed. (CCH) 75,640
 NEW AMERICA SHIPBUILDERS, INC., Robert Brazier, individually
and as President of New America Shipbuilders, Inc.; Travis
Short, individually and as Vice-President of New America
Shipbuilders, Inc. and Priscilla Culberson, individually and
as Vice-President of New America Shipbuilders, Inc.,
Plaintiffs-Appellants,
v.
The UNITED STATES, Defendant-Appellee.
 No. 88-1595.
 United States Court of Appeals,
Federal Circuit.
 April 4, 1989.
 
 William J. Huff, Pascagoula, Miss., submitted for plaintiffs-appellants.
 E. Richard Southern, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., argued for defendant-appellee. John R. Bolton, Asst. Atty. Gen., David M. Cohen, Director and Helene M. Goldberg, Asst. Director, Commercial Litigation Branch, Dept. of Justice, Washington, D.C., were on the brief for defendant-appellee.
 Before RICH, Circuit Judge, NICHOLS, Senior Circuit Judge, and BISSELL, Circuit Judge.
 NICHOLS, Senior Circuit Judge.
 New America Shipbuilders, Inc. (NASI) appeals the decision of the United States Claims Court, New America Shipbuilders, Inc. v. United States, 15 Cl.Ct. 141 (1988) (Robinson, J.). The Claims Court granted the government's motion for summary judgment and dismissed NASI's claim. We affirm.
 
 Background
 
 1
 The Small Business Administration (SBA) approved NASI for participation in its program for disadvantaged persons participating in the high-tech industry. Under this program, the SBA, at its discretion, may grant Business Development Expense (BDE) funds to program participants to assist in the performance of subcontracts. 15 U.S.C. Secs. 636(j) and 637(a); sections 7 and 8(a) of the Small Business Act of 1953, as amended and supplemented.
 
 
 2
 NASI entered into extensive negotiations with the SBA and the United States Coast Guard (USCG) concerning the formation of a contract for the construction of three aids-to-navigation boats, to be aided by a BDE grant without which NASI would be unable to perform. NASI's case is this: NASI is a firm with scant capitalization or ship-building experience. It claims a right to participate in government contracts which are "set-aside" for companies having "minority" ownership--in this instance, a black person--to the extent of over 50 percent. The procedural track was, that the SBA would make a prime contract with the USCG to build and deliver the required boats. SBA would subcontract the work to NASI and also would grant the BDE funds above the contract price deemed requisite for completion. The parties negotiated for a considerable period, during which the two government agencies allegedly became aware of certain weaknesses in NASI's entitlement to SBA assistance under the program, e.g., a doubt whether the alleged minority participant actually had a qualifying interest and a failure to put into NASI the modest private capital required. NASI alleges that the government agencies suppressed these doubts and allowed NASI's owners to incur various expenses in the belief that the expected contract award and BDE grant were certainties or practically so. At a late date, politically prominent persons whose names do not appear in our record intervened to obtain the award and grant for a firm located in Puerto Rico and having Hispanic ownership. Rather than resolve the touchy issue of choosing whether to favor a black or a Hispanic disadvantaged business entity, the government agencies decided to call off the whole thing and obtain the boats through the ordinary procurement methods; thus, both claimants to SBA support lost out. No contract award was made, nor any BDE grant. The long-known doubtful points in NASI's application were trotted out and made the pretext for canceling the award as a "minority" set-aside for unavowed real reasons. Thus, whatever investment the owners actually did make was put at risk and most likely lost. It is to be hoped, but not shown in this record, that the Coast Guard actually obtained three aids-to-navigation boats before the aids failed for lack of maintenance.
 
 
 3
 Such is NASI's case as revealed in the documents before the Claims Court and in its own arguments. On summary judgment the Claims Court made no findings of fact and neither do we. However, a summary judgment that the above-alleged facts did not occur could not be made, and if they were relevant they would have to be established by trial.
 
 Discussion
 
 4
 * If the government misconduct alleged was tortious, jurisdiction is not granted the Claims Court under the Tucker Act, 28 U.S.C. Sec. 1491, its sole source of jurisdiction in this case. Somali Development Bank v. United States, 508 F.2d 817, 822, 205 Ct.Cl. 741 (1974). The summary judgment below in effect held that the claim as presented, essentially to enforce an implied contract having the terms of the intended express contract and award would have had, was also not maintainable. On reviewing the summary judgment material, we believe this claim, if maintainable on a contract theory at all, was so as a claim for breach of the implied contract to give all government contract bids fair and honest consideration. See NKF Engineering, Inc. v. United States, 805 F.2d 372, 375-76 (Fed.Cir.1986); CACI, Inc.-Federal v. United States, 719 F.2d 1567, 1573 (Fed.Cir.1983); Keco Industries Inc. v. United States, 492 F.2d 1200, 1203, 203 Ct.Cl. 566 (1974); Keco Industries Inc. v. United States, 428 F.2d 1233, 1236-38, 192 Ct.Cl. 773 (1970). If the claim belonged under this rubric, the damages would be less favorable to claimants, because they would not include anticipated profits under the hoped for contract, but only a class of expenses generally lumped as "bid preparation costs." In City of Alexandria v. United States, 737 F.2d 1022 (Fed.Cir.1984), this difference was held to preclude use of these cases to support a claim to the value of the lost bargain.
 
 
 5
 Appellant elected to submit without oral argument but appellee appeared before us by counsel. Although the issue mentioned in the paragraph above was not discussed in the briefs, counsel for appellee appeared well prepared to discuss it orally. His objection was that the authorities that established the judge-made rule, whereby an implied contract is enforced, requiring fair consideration of a bid, for a contract of competitive bid procurement, does not extend to a noncompetitive claim for a discretionary grant under any case law now available. Tree Farm Development Corp. v. United States, 585 F.2d 493, 499, 218 Ct.Cl. 308 (1978), supports this view of the cases. Obviously, the equities would not be the same. While any judge-made rule extends as far as the judges say it extends, it does appear that, as applied to a grant, the rule referred to would be new. We are not willing to base a decision on a rule not urged by any party and not at all free of doubt though it might be an appellant's best hope in view of the glaring weakness of its appeal on the grounds urged.
 
 II
 
 6
 NASI alleged that the negotiations culminated into an implied-in-fact contract which it seeks to enforce. The Claims Court granted the government's summary judgment motion and held that there was no implied-in-fact contract and the government is not equitably estopped from denying the contract.
 
 
 7
 To overturn summary judgment, the appellant must show that one or more of the facts that the trial court relied on was genuinely in dispute and material to the judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); Avia Group Int'l v. L.A. Gear California, Inc., 853 F.2d 1557, 1561-62, 7 USPQ2d 1548, 1551-52 (Fed.Cir.1988).
 
 
 8
 Many of the factual issues pertaining to the existence of the alleged implied-in-fact contract are disputed. However, the Claims Court found a number of fatal defects in NASI's prima facie case. One defect discussed but not resolved by the Claims Court concerns the authority of the SBA official who purportedly approved the grant of BDE funds. NASI urges that SBA approval was given, and the government argues that it was not. Both parties recognize, however, that even if approval was given, the approval must be within the approving official's authority in order to be operative. See Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384, 68 S.Ct. 1, 3, 92 L.Ed. 10 (1947). Oral assurances do not produce a contract implied-in-fact until all the steps have been taken that the agency procedure requires; until then, there is no intent to be bound. Thus, it is irrelevant if the oral assurances emanate from the very official who will have authority at the proper time, to sign the contract or grant. Empresas Electronicas Walser, Inc. v. United States, 650 F.2d 286, 223 Ct.Cl. 686, 688, cert. denied, 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 217 (1980). Where an approving official exceeds his authority, the government can disavow the official's words and is not bound by an implied contract. Id.
 
 
 9
 NASI argues that it received approval of the BDE grant from an official of the SBA. From the briefs, it is not clear whether the official NASI believes it received approval from is Mr. Miller Widemire, the SBA Regional Administrator, or his subordinate, Mr. Robert Funches, the Assistant District Director for Minority Small Business for the SBA District Office in Jackson, Mississippi. Possibly, NASI is arguing that Mr. Widemire approved the BDE grant by delegating his authority to Mr. Funches, who recommended approval of the grant. Writing by Mr. Funches recommending approval is actually what appellant relies on. In any event, it is clear that NASI does not allege that approval of the BDE grant was communicated to it from any official of greater rank than Mr. Widemire. Resolving the ambiguity in favor of NASI, we interpret the argument to be that Mr. Widemire approved the BDE grant to NASI by means not shown.
 
 
 10
 NASI points to the testimony of Mr. Henry T. Wilfong, Jr., the Associate Administrator for Minority Small Business and Capital Ownership Development at the time of the negotiations, to support its position that Mr. Widemire's approval of the BDE grant was authorized. Mr. Wilfong testified to his belief that the regional administrator's (Mr. Widemire's) authority extended to all grants under $500,000. Mr. Wilfong's subjective understanding of the scope of Mr. Widemire's authority is not determinative of this issue. We do not think on summary judgment an impression or belief of that nature produces a triable issue of fact if the documentary evidence contradicts the belief. The extent of a public official's authority is not to be established by his or other's beliefs in the face of official documents. The legal issue of whether Mr. Widemire was authorized to approve the funds in question is appropriately determined by the SBA's internal published procedures which state:
 
 
 11
 All appropriate regional personnel shall be advised by the regional administrator that regional approval authority for use of BDE is limited to the lesser of:
 
 
 12
 $350,000 or
 
 
 13
 15 Percent of the fair market price for price differential or funds to defray other costs
 
 
 14
 or 50% of the contract price for capital equipment.
 
 
 15
 According to the above-cited rule, Mr. Widemire's approval authority was at most $350,000. The funds in question totaled $435,000 and any approval by Mr. Widemire would therefore be unauthorized if indeed such approval was given. The short of it is that on summary judgment appellant demonstrated no capacity to show that a contract implied-in-fact was made.
 
 
 16
 Estoppel is often claimed in this class of cases, as here. If a government official represents to a potential contractor that requisite steps to clear the way for the award have been taken, as in City of Alexandria v. United States, 737 F.2d 1022 (Fed.Cir.1984), or the requisite approval necessary to form a contract has been given, the government can yet disavow the contract if steps were not taken that procedure requires or if the approval exceeded the official's authority. Empresas Electronicas Walser, Inc. v. United States, 650 F.2d 286, 223 Ct.Cl. 686, 688, cert. denied, 449 U.S. 953, 101 S.Ct. 357, 66 L.Ed.2d 217 (1980), citing Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Resolving all doubts in favor of NASI, we may suppose that Mr. Widemire did approve the grant of BDE funds. That approval having been made outside the scope of his authority and outside normal procedure, however, the approval was legally ineffective and does not bind the United States to an implied-in-fact contract or by estoppel.
 
 III
 
 17
 NASI also argues that it was unable fully to prepare its opposition to the government's summary judgment motion owing to the trial court's suspension of discovery pending the summary judgment motion. The trial court gave NASI the opportunity to show that additional discovery was required in order to respond to the government's summary judgment motion. However, NASI "did not even attempt to show at any time during the briefing period that discovery was necessary to respond to defendant's motion for summary judgment." New America Shipbuilders, supra, 15 Cl.Ct. at 145. "A party may not simply assert that discovery is necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." Keebler Co. v. Murray Bakery Products, 866 F.2d 1386, 1389, 9 USPQ2d 1736, 1739 (Fed.Cir.1989). See also Avia Group Int'l v. L.A. Gear California, Inc., 853 F.2d 1557, 1561, 7 USPQ2d 1548, 1551 (Fed.Cir.1988). One important advantage sought by the rules from the summary judgment procedure is to save the parties and the court the time and cost that may be wasted in pursuit of irrelevant facts by discovery. NASI having made no showing as to the need for discovery, the trial court did not abuse its discretion in staying discovery.
 
 
 18
 We have considered NASI's other arguments concerning improper denial of BDE funds and equitable estoppel, but find them unpersuasive.Conclusion
 
 The judgment of the Claims Court is
 
 19
 AFFIRMED.