**ISRATEX, INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 91–1699C.

United States Claims Court.

Feb. 6, 1992.

Marc Lamer, Philadelphia, Pa., for plaintiff.

Virginia M. Lum, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant. Sandra Guydon, Defense Personnel Support Center, Philadelphia, Pa., of counsel.

## OPINION

NETTESHEIM, Judge.

On cross-motions for summary judgment after argument, this pre-award bid protest action questions whether the Government lawfully can exclude an offeror from participation in a negotiated procurement. The offeror's product demonstration model

**1.** Amendment 0001 is not relevant to these proceedings.

**2.** The solicitation both as originally issued and as modified by Amendment 0002 requested a description of past performance and a price

failed a mandatory test. The request for proposals, however, did not indicate the relative importance of the characteristics involved, nor did it advise offerors that automatic exclusion would follow from the test failure.

## FACTS

The following facts are undisputed. On March 25, 1991, the Department of Defense, Defense Logistics Agency ("DLA"), Defense Personnel Support Center ("DPSC"), issued Solicitation DLA100–91–R–0120. DPSC is a supply center located in Philadelphia, Pennsylvania, that is maintained by DLA. The solicitation requested proposals for the manufacture of "792,408 EA Parka, Extended Cold Weather Clothing System (ECWS) Woodland Camouflage." Half of the quantity was set aside for small businesses. The solicitation requested that proposals be submitted by April 19, 1991.

On April 17, 1991, Amendment 0002 modified the solicitation; this amendment, *inter alia*, extended the closing date for proposals to May 21, 1991, and added a requirement that offerors submit a Product Demonstration Model (the "PDM").[1] Section L of the solicitation, entitled "INSTRUCTIONS, CONDITIONS AND NOTICE TO OFFERORS," stated, after modifications by Amendment 0002, that the proposal was to be submitted in three parts: PDM, Past Performance, Accelerated Delivery. Section L also stated that "[a] properly executed solicitation constitutes an acceptable pricing proposal."[2] Section L required that each offeror submit two PDMs. With respect to the submission of the PDMs, Section L provided, in pertinent part, the following:

## SUBMISSION OF PRODUCT DEMONSTRATION MODEL:

a. Models, as specified below, must be furnished as part of the offer and must

proposal. Only the amended solicitation addressed the provision of an accelerated delivery schedule. The amended solicitation encouraged, but did not require, bidders to provide an accelerated delivery schedule.

be received by the time set forth for closing of offers. Models will be evaluated to determine compliance with all characteristics listed in the end item specification.

b. Failure of the models to conform to all such characteristics may result in rejection of the offer.

. . . .

d. The PDM's shall be tested as follows:

1. One (1) complete garment shall be tested for hydrostatic resistance of the seams in accordance with para. 4.5.1 of MIL–P–44188B ["The parka shall be tested at four different locations. . . . Evidence of leakage in one or more seam locations shall be considered a test failure."].

2. The other complete garment shall be subjected to visual and dimensional examination in accordance with paras. 4.4.2 and 4.4.3 of MIL–P–44188B. [Paragraph 4.4.2 provides an extensive list of possible defects for which end items are to be examined. Defects include cuts, tears, holes, omitted items, incorrectly placed or attached items, and improper stitching. Paragraph 4.4.3 specifies dimensions to which the end items must conform.]

Section M, entitled "EVALUATION CRITERIA AND BASIS FOR AWARD," as modified by Amendment 0002, stated, in part, the following:

b. The technical quality of proposals shall be determined by assessment of the following technical evaluation factors. They are listed in descending order of importance:

1. Product Demonstration Model

2. Past Performance

3. Accelerated [D]elivery[.]

With respect to the requirement that offerors provide two PDMs, Section M provided the following:

EVALUATION OF THE PRODUCT DEMONSTRATION MODELS:

Product Demonstration Models must be submitted as part of the offer at no expense to the Government. Character-

istics for which the models will be tested or evaluated are:

1. Quality of construction (including seam sealing)

2. Workmanship

3. Conformance to the dimensional and visual requirements of the end item specification.

4. Test requirements: One (1) complete garment shall be tested for hydrostatic resistance of the seams in accordance with para. 4.5.1 of MIL–P–44188B. The other complete garment shall be subjected to visual and dimensional examination in accordance with paras. 4.4.2 and 4.4.3 of MIL–P–44188B. . . .

Jacqueline Pelullo, the contracting officer who drafted Amendment 0002, was tasked with buying the items required under the solicitation. She testified on deposition that the manner of listing these subfactors was not intended to show their order of importance. Specifically, she stated:

When I wrote this [the subfactors] up, I just listed them. They're—in my mind there was no separate weight for any of the items. . . .

. . . .

In my mind, they are not all even. I just wanted to say, the way they're listed here was not meant to show an order of importance. I don't believe that we indicated that.

In addition, Contracting Officer Pelullo stated that she knew the hydrostatic resistance test was "very important."

Section M also provided an "ADJECTIVAL RATING SYMBOLOGY" that set forth three possible ratings: "Acceptable," "Marginally Acceptable," and "Unacceptable." The definition given for "Unacceptable" read, as follows:

*Unacceptable:* Proposal fails to meet solicitation requirements. Offeror's record of past performance demonstrates a lack of commitment to customer satisfaction and timely delivery of quality goods. A rating of this magnitude indicates a product of unacceptable quality with no probability of successful performance. The technical proposal is un-

acceptable without substantial correction which would constitute a new proposal.

Amendment 0006 to the solicitation, issued on June 27, 1991, established the final quantity of parkas required by the solicitation and the final closing date for offers.[3] The number of parkas was 672,888, 336,432 of which were set aside for small businesses. The closing date for offers was extended to July 15, 1991. DPSC received 20 offers by the closing date.

Isratex, Inc. ("plaintiff"), was one of the offerors that submitted a timely proposal to DPSC. Two of DPSC's employees, along with two employees of the United States Army Natick Research, Development and Engineering Center ("Natick"), conducted the evaluations of plaintiff's and the other offerors' PDMs. Plaintiff's PDM failed the hydrostatic resistance test due to three leaks in the back neck hood seam. Three other offerors' PDMs also failed the hydrostatic resistance test. PDMs that failed the hydrostatic resistance test received automatically, *i.e.*, regardless of any other factor, a rating of "Unacceptable." [4] DPSC eliminated from further consideration proposals that received a rating of "Unacceptable" on the PDM. PDMs that passed the hydrostatic resistance test, but exhibited other specification deficiencies—either workmanship or dimensional deficiencies—received ratings of "Marginally Acceptable." DPSC directed some of the offerors that received a "Marginally Acceptable" rating on their PDMs to submit new PDMs.

On November 12, 1991, DPSC sent a letter to plaintiff and the other three offerors whose PDMs failed the hydrostatic resistance test, notifying them that their proposals would not receive further consideration. The letter to plaintiff stated, in part:

[Y]ou are advised that your proposal submitted in response to subject solicitation was determined not to be within the competitive range determined for negotiation purposes. This determination was made after an integrated assessment of all evaluated factors, such as Production Demonstration Models, technical proposal, acceleration of delivery and price. Therefore, your proposal, as well as any further revisions, will not be considered.

Attached to the letter was an evaluation of plaintiff's PDM, rating the PDM as "Unacceptable" and noting the deficiencies with the PDM.[5] With respect to the other factors that the solicitation stated would be evaluated, Ms. Pelullo testified in her deposition that plaintiff's past performance was rated "Marginally Acceptable," that plaintiff's accelerated delivery was rated as "Acceptable," and that plaintiff's price appeared to be in the competitive range.

On November 12, 1991, in addition to notifying those offerors that failed the hydrostatic resistance test that their proposals had been eliminated from further consideration, DPSC issued Amendment 0007 to the solicitation. Amendment 0007, in relevant part, modified the definition of "Unacceptable" to read:

> *Unacceptable:* **The Production Demonstration Model fails to meet the stated technical features of the specification/solicitation requirements.** Offeror's record of past performance demonstrates a lack of commitment to customer satisfaction and timely delivery of quality goods. A rating of this magnitude indicates a product of unacceptable quality with no probability of successful performance. **The Model is unacceptable as submitted and cannot be made acceptable without substantial**

---

3. Amendments 0003–0005 are not relevant to this litigation.

4. Defendant contends that Contracting Officer Pelullo did not state that PDMs were automatically rejected if they failed the hydrostatic resistance test. Although Ms. Pelullo objected in her deposition to use of the word "automatically," she effectively admitted that rejection was automatic when she responded "[e]xactly" to the

following question: "So if you submit a PDM, regardless of any other factor, if you failed hydrostat your PDM was rated unacceptable?"

5. Normally, offerors are not given such an evaluation or informed of deficiencies that caused an unacceptable rating until after award of the contract. DPSC inadvertently attached the PDM evaluation to plaintiff's letter.

**correction which would constitute a new proposal.**

(Boldface indicates sentences modified from the original solicitation.) Contracting Officer Pelullo explained that this modification was intended to expand the symbology in Amendment 0002, which originally had added the PDM requirement. Plaintiff's proposal was evaluated under the definition of "Unacceptable" as it was formulated in Amendment 0002, not as it appeared in Amendment 0007.

Subsequent to receiving notification that its proposal was no longer under consideration, plaintiff submitted two new PDMs to DPSC. DPSC advised plaintiff that these PDMs would not be evaluated. No offeror whose PDMs failed the hydrostatic resistance test was permitted to submit new PDMs.

On November 21, 1991, DPSC issued Amendment 0009 to the solicitation.[6] This amendment added an "Availability of Funds" clause to the solicitation. The clause provides:

> Offerors are cautioned that this acquisition currently has not been funded for contact award, or if funds are currently available, they may be reallocated prior to award due to budgetary constraints. Although a requirement exists, award need not be made unless and until funding is available.

Plaintiff filed a complaint and motion for a temporary restraining order pursuant to 28 U.S.C. § 1491(a)(3) (1988), seeking to enjoin DPSC from awarding the contract unless and until DPSC evaluates plaintiff's resubmitted PDMs. During briefing defendant reported that contract award was deferred until at least February 7, 1992. Plaintiff's request for permanent injunctive relief consequently proceeded to the merits without an interim order. At argument defendant advised the court that the earliest date for contract award had been extended to February 21, 1992. The parties agreed that disposition by summary judgment was appropriate.

**6.** Amendment 0008 is not relevant to these pro-

## DISCUSSION

1. *Standards for injunctive relief*

 Pursuant to 28 U.S.C. § 1491(a)(3), the Claims Court may grant injunctive relief in a pre-award bid protest case where the Government has breached its implied duty to consider a bid honestly and fairly. *New America Shipbuilders, Inc. v. United States*, 871 F.2d 1077, 1079 (Fed.Cir.1989) (citations omitted); *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 909 (Fed.Cir.1988) (citations omitted). However, " 'injunctive relief [is] awardable ... only in extremely limited circumstances.' " *CACI, Inc.–Federal v. United States*, 719 F.2d 1567, 1581 (Fed. Cir.1983) (quoting *United States v. John C. Grimberg Co.*, 702 F.2d 1362, 1372 (Fed. Cir.1983)). An offeror in a negotiated procurement may obtain injunctive relief if it establishes either that the agency's actions were without a rational or reasonable basis, or that a clear and prejudicial violation of an applicable procurement statute or regulation occurred. *Logicon, Inc. v. United States*, 22 Cl.Ct. 776, 782 (1991) (citing *CACI Field Servs., Inc. v. United States*, 854 F.2d 464, 466 (Fed.Cir.1988) (per curiam), and *National Forge Co. v. United States*, 779 F.2d 665, 668 (Fed.Cir. 1985)).

 Defendant incorrectly asserts that plaintiff must establish its entitlement to injunctive relief by clear and convincing evidence. As this court stated in *Logicon*, "[s]hort of a permanent injunction, the accepted standard is proof of a strong likelihood of success on the merits. The standard for a permanent injunction is a preponderance of evidence that the challenged action is irrational or unreasonable or violates an applicable procurement [statute or] regulation." 22 Cl.Ct. at 783 (citing cases). Defendant's preferred standard tortures the legal lexicon, which is dense in the best of circumstances, *viz.*, defendant wants a contractor to meet the standard of "proof by clear and convincing evidence of a clear and prejudicial violation of an applicable procurement statute or regulation." How-

ceedings.

ever, after urging this standard with some success at the trial level for nine years, defendant has not succeeded in creating binding precedent making an already exacting burden of proof virtually unsurmountable, as well as incomprehensible.

### 2. *Evaluation of plaintiff's proposal*

■ Plaintiff contends that DPSC's evaluation of plaintiff's proposal for Solicitation DLA100–91–R–0120 was not in accordance with the evaluation scheme set forth in the solicitation. Plaintiff relies, in part, on 10 U.S.C. § 2305 (1988 & Supp. II 1990), to support its position. 10 U.S.C. § 2305 provides, in pertinent part:

§ 2305. **Contracts: planning, solicitation, evaluation, and award procedures**

(a)(1)(A) In preparing for the procurement of property or services, the head of an agency shall—

(i) specify the agency's needs and solicit bids or proposals in a manner designed to achieve full and open competition for the procurement;

. . . .

(2) In addition to the specifications described in paragraph (1), a solicitation for sealed bids or competitive proposals . . . shall at a minimum include—

(A) a statement of—

(i) all significant factors (and significant subfactors) which the head of the agency reasonably expects to consider in evaluating sealed bids (including price) or competitive proposals . . .

(ii) the relative importance assigned to each of those factors (and subfactors). . . .

Plaintiff's contention with respect to section 2305(a)(2) is that DPSC's solicitation did not state the relative importance of the subfactors relating to the PDM.

The solicitation listed four subfactors that would be evaluated with respect to the PDM. The solicitation numbered these subfactors, but did not state the relative importance of each of them. Contracting Officer Pelullo acknowledged that the order in which the subfactors were listed was not intended to represent their relative importance and that the solicitation did not state the relative importance of the subfactors. Nevertheless, the contracting officer stated that in her evaluation of the proposals she considered subfactor 4, the hydrostatic resistance test, as "very important;" that failure of the hydrostatic resistance test resulted in rejection of the PDM, regardless of any other factor; and that rejection of an offeror's PDM resulted in automatic rejection of the offeror's proposal.

■ Consequently, the issue for decision is whether there was a clear and prejudicial violation of an applicable procurement statute.[7] Section 2305(a)(2) requires that a solicitation set forth the relative importance of subfactors. Solicitation DLA100–91–R–0120 did not state the relative importance of the four subfactors listed for the PDM. When no indication of relative importance is given, an offeror can assume that the subfactors will be equally weighted. *In-*

---

7. The court does not find convincing defendant's contention that section 2305 is applicable to sealed bids, not negotiated bids. Section 2305(a)(2) states that the statute applies to both sealed bids and competitive proposals that contemplate negotiation. Section 2305(a)(4)(A) provides the following:

The head of an agency shall evaluate competitive proposals in accordance with paragraph (1) and may award a contract—
(i) after discussions with the offerors, provided that written or oral discussions have been conducted with all responsible offerors who submit proposals within the competitive range; or
(ii) based on the proposals received, without discussions with the offerors (other than

discussions conducted for the purpose of minor clarification) provided that the solicitation included a statement that proposals are intended to be evaluated, and award made, without discussions, unless discussions are determined to be necessary.

The solicitation at issue is a request for proposals that also contemplates negotiation. Section M of the solicitation states, in pertinent part:

The Government will select the most successful offeror on an integrated assessment of the proposal submitted in response to this solicitation and on the terms and conditions agreed upon during negotiations, if any. . . .
The request for proposals in the instant case is the same as a competitive proposal.

*formatics, Inc.*, No. B–194734, 79–2 C.P.D. (Fed.Pub.) ¶ 144, *aff'd sub nom. Information Processing Servs. Div., Info. Servs. Group of Informatics, Inc. v. Harris*, 26 C.C.F. (CCH) ¶ 83,698 (D.D.C.1979); *Dikewood Servs. Co.*, No. B–186001, 76–2 C.P.D. (Fed.Pub.) ¶ 520.[8] If the relative importance of all subfactors was not given because a solicitation contemplated that all subfactors were of equal importance, the solicitation would comport with section 2305. In that circumstance no relative importance would exist among the subfactors. That situation is not present in the case at bar.

In this case the contracting officer considered the hydrostatic resistance test as a "very important" subfactor, so important, in fact, that failure of the test caused offerors' proposals to be rejected. Deficiencies relating to workmanship or dimensional requirements of the PDM did not result in rejection of other offerors' proposals; indeed, DPSC directed those offerors to submit new corrected PDMs. Thus, the hydrostatic resistance test was accorded far greater weight than the other subfactors in evaluation of an offeror's PDM and proposal. Section 2305(a)(2) required that DPSC weigh equally the subfactors, in the absence of a statement of their relative importance. DPSC neither stated the relative importance of the subfactors nor equally weighed the subfactors. DPSC therefore violated 28 U.S.C. § 2305(a)(2) when it gave predominant weight to the hydrostatic resistance test subfactor.

 Having established the clear violation of an applicable procurement statute, the next question to be addressed is whether the violation was prejudicial. If defendant's contention were accepted—that the solicitation alerted offerors that a PDM's passing the hydrostatic resistance test was a *sine qua non* for staying in the competi-

tion—DPSC's violation of the statute would not have prejudiced plaintiff. In other words, if the solicitation put offerors on notice that passing the hydrostatic resistance test was a mandatory requirement of the solicitation, DPSC's violation of section 2305 would not be deemed prejudicial.

Amendment 0002 to the solicitation put plaintiff and the other offerors on notice that failure of the PDM "to conform to all such characteristics [all characteristics listed in the end-item specification] may result in rejection of the offer." This language, however, does not effect notice that passing the hydrostatic resistance test was a mandatory requirement. The language applies to all end-item specifications relating to the PDM. If the court were to construe the language as putting an offeror on notice that passing the hydrostatic resistance test was mandatory, the court effectively would be holding that satisfying all end-item specifications relating to the PDM was required or a PDM would be rejected. Such a construction would transmute the permissive "may" to a mandatory "shall." To the contrary, Contracting Officer Pelullo did not view the satisfaction of all end-item specifications as mandatory; acting pursuant to this standard, she decided not to reject some proposals with PDMs that exhibited deficiencies.

If DPSC intended that passing the hydrostatic resistance test was a mandatory requirement, DPSC should have stated so in language typically used for such purposes.[9] *See Hughes Advanced Sys. Co.*, GSBCA No. 9601–P, 88–3 B.C.A. (CCH) ¶ 21,115, at 106,602 (citing *International Business Machs. Corp.*, GSBCA No. 9293–P, 88–1 B.C.A. (CCH) ¶ 20,512, at 103,697 (RFP stated: "Proposals ... shall meet all the [G]overnment's requirements in Section C in order to be eligible for evaluation...."); *Spectragraphics Corp.*, GSBCA No. 9194–

---

8. The court notes that although these cases were decided prior to enactment of the requirement in section 2305 that the relative importance of subfactors be stated in a solicitation, the proposition for which these cases are cited still holds: If a solicitation does not list the relative importance of subfactors, the assumption is that the subfactors are to be equally weighed.

9. DPSC used such language with respect to an option for the unrestricted quantity portion of the solicitation: "THIS IS A MANDATORY OPTION.... FAILURE TO OFFER ON THE OPTION QUANTITY WILL RESULT IN REJECTION OF THE OFFER."

P, 88–1 B.C.A. (CCH) ¶ 20,333, at 102,786 (RFP stated: "The Government shall not consider for award proposals that do not meet the mandatory requirements."); *CPT Corp.*, GSBCA No. 8134–P–R, 86–1 B.C.A. (CCH) ¶ 18,727, at 94,206 (RFP stated: "In order to have an acceptable proposal, the offeror must meet all of the mandatory requirements set forth in Section C.2 of the Solicitation Document. . . .")).

Had the solicitation given notice that the hydrostatic resistance test would be the deciding factor in an evaluation of an offeror's proposal, DPSC's violation of 28 U.S.C. § 2305(a)(2) would not have prejudiced plaintiff. Defendant argues unpersuasively that the solicitation gave such notice. Defendant contends that because a separate garment was required for the hydrostatic resistance test, because leakage in a seam caused failure of that test, and because the defining characteristic of the garment to be manufactured was its waterproof nature,[10] an offeror was on notice that the hydrostatic resistance test was of predominant importance. The law does not support defendant's argument.

"[W]here one factor is to have predominant consideration over the other factors, this should be disclosed to the offerors." *Sperry Rand Corp., Univac Div.*, No. B–179875, 74–2 C.P.D. (Fed.Pub.) ¶ 158, at 11. "As a matter of sound procurement policy, the fullest possible disclosure of all of the evaluation factors and their relative importance is to be preferred to reliance on the reasonableness of the offerors' judgment as to the relative significance of the various evaluation factors." *BDM Servs. Co.*, No. B–180245, 74–1 C.P.D. (Fed.Pub.) ¶ 237, at 8. In the case at bar, offerors were not given notice that the hydrostatic resistance test would be a predominant factor in the evaluation of proposals. The solicitation stated that one garment was required for the hydrostatic resistance test and one garment was required for visual and dimensional examination. The solicitation listed the hydrostatic resistance test and the visual and dimensional examination together as one of the four subfactors relating to the PDM that would be evaluated. The solicitation did not specify that the hydrostatic resistance test would be of predominant importance.[11]

The inference that defendant asks this court to draw is not unreasonable: An offeror could have been expected to discern that a waterproof PDM was an absolute requirement for award. *See supra* note 10. However, an offeror also could have been expected to discern that a PDM must be void of visual and dimensional defects, such as cuts, tears, holes, incorrectly attached components or improperly sized components. The offeror would have to have been clairvoyant to anticipate that failing the hydrostatic resistance test alone would automatically disqualify its proposal, while exhibiting other deficiencies would allow the offeror to be given a second chance at contract award.

Defendant's contentions that the solicitation gave notice that passing the hydrostatic resistance test would be a mandatory requirement or a predominant factor in evaluation of proposals do not provide a credible basis for holding that DPSC's violation of the statute was nonprejudicial to plaintiff. Because the solicitation did not state the relative importance of the subfactors, plaintiff could assume that the subfactors would be equally weighed. When DPSC accorded predominant weight to the

---

10. The stated scope of the military specification for "PARKA, COLD WEATHER, CAMOUFLAGE" is, as follows:

> This specification covers a nylon, microporous expanded polytetra-fluoroethylene ... three layer laminated waterproof and moisture vapor permeable parka, a component of the Extended Cold Weather Clothing System.

11. Plaintiff noted that a contract specialist for DPSC rated plaintiff's overall proposal as "Marginally Acceptable," despite rating plaintiff's PDM as "Unacceptable" based on the PDM's failing the hydrostatic resistance test. Plaintiff contends that this discrepancy in ratings demonstrates that the solicitation did not explicitly set out that failure of the hydrostatic resistance test would result in rejection of a proposal.

Although plaintiff's point is noted, it is the contracting officer, not the contract specialist, who has the authority to determine the acceptability of a proposal. It is the contracting officer's determinations that are at issue in this proceeding.

hydrostatic resistance test—in effect making it a mandatory requirement—DPSC violated section 2305(a)(2). Plaintiff was prejudiced thereby, since DPSC rejected its proposal while at the same time not rejecting other proposals that exhibited deficiencies with respect to subfactors that should have been accorded weight equal to that of the hydrostatic resistance test. The evidence supports a finding that DPSC's violation of section 2305(a)(2) was both clear and prejudicial.

### 3. *Other showings for injunctive relief*

To be entitled to injunctive relief, "plaintiff must make three additional showings: (1) that it will suffer specific irreparable injury if the procurement is not enjoined; (2) that the harm to be suffered by it outweighs the harm to the Government and third parties if the procurement is enjoined; and (3) that granting of the relief serves the public interest." *Logicon*, 22 Cl.Ct. at 795 (citation omitted).

Plaintiff has demonstrated that it will lose the opportunity to have its proposal fairly and honestly considered should the Claims Court deny its request for injunctive relief. Absent injunctive relief, plaintiff would be irreparably damaged since an action at law would allow plaintiff to recoup only bid preparation costs. *Essex Electro Engineers, Inc. v. United States*, 3 Cl.Ct. 277, 287 (1983) (citing *M. Steinthal & Co. v. Seamans*, 455 F.2d 1289, 1302 (D.C.Cir.1971); *Keco Indus. Inc. v. United States*, 203 Ct.Cl. 566, 575, 492 F.2d 1200, 1204 (1974); *General Elec. Co. v. Seamans*, 340 F.Supp. 636, 640 (D.D.C.1972)).

Because DPSC would be required to allow plaintiff and the other offerors whose proposals were rejected three weeks to submit new PDMs, defendant contends that the orderly process of the procurement would be disrupted if the procurement was enjoined. The asserted harm caused by such a delay is minimal, if any. The procurement has proceeded at a leisurely pace ˢince it was issued on March 25, 1991. Defendant claims no urgent development that calls for immediate consummation of a contract and, in fact, has advised the court that the earliest date for award would be February 21, 1992. Furthermore, DPSC amended the contract on November 21, 1991, to notify offerors that award would not be made unless and until funding is available. These factors indicate that any harm caused by granting the requested injunctive relief is merely the possibility of delay of less than one month. The harm caused to plaintiff and the other offerors whose proposals were denied fair and honest consideration outweighs the harm to the Government and third parties from a possible short delay in the procurement.

Granting injunctive relief serves the public interest. The "public interest in making procurement dollars available to qualified contractors; in obtaining services at the lowest cost consistent with procurement needs; [and] in avoiding unfair auction techniques," *Logicon*, 22 Cl.Ct. at 795–96, such as clear and prejudicial violation of a statute, is served by allowing offerors whose proposals were unfairly rejected an opportunity to have their proposals fairly and honestly considered by the Government.[12]

## CONCLUSION

█ Injunctive relief is warranted. Award of the contract will be enjoined to allow those offerors whose proposals were rejected because their PDMs failed the hydrostatic resistance test an opportunity to submit new PDMs. Upon receiving notice from DPSC, offerors shall have three weeks to resubmit new PDMs. DPSC shall be free to conduct whatever negotiations it deems appropriate to award the contract after it has evaluated these proposals. Accordingly,

IT IS ORDERED, as follows:

1. Defendant, by and through the Department of Defense, Defense Logistics Agency, Defense Personnel Support Cen-

---

**12.** The court does not address plaintiff's contention that DPSC erroneously rated the entire proposal "Unacceptable."

ter, and its officers, agents, and employees, are enjoined and restrained from awarding a contract on Solicitation DLA100–91–R–0120 to any offeror without having allowed plaintiff and any other affected offeror to submit for evaluation two PDMs, provided that the PDMs are received by DPSC no later than 21 days after DPSC notifies all affected offerors that they may submit two PDMs.

2. DPSC shall notify all affected offerors (those whose proposals were rejected for failure to pass the hydrostatic resistance testing) of any deficiencies in their originally submitted PDMs and of the 21–day period after the date of notice within which they must submit two corrected PDMs that comply with the solicitation and all current amendments thereto: one to be tested for hydrostatic resistance and the other to be tested for visual and dimensional requirements.

3. Nothing herein prohibits DPSC from determining not to make award under the subject procurement, whether due to lack of funding or for any other reason. If none of the affected offerors bid on the set aside, the injunction shall not be applicable to the set-aside portion of the procurement.

4. Counsel for defendant shall communicate by no later than 10:00 a.m. Friday, February 7, 1992, the contents of this ordering language to the contracting officials of DPSC and shall deliver to them a copy of the opinion as soon as practicable.

5. This injunction automatically expires 30 days after DPSC has given all affected offerors the notice required by ¶¶ 1–2 hereof.

6. The Clerk of the Court shall maintain under seal page 87 of plaintiff's appendix to its summary judgment motion, subject to further order of the court.

7. The Clerk of the Court shall enter judgment in accordance with the foregoing.