**Maurice GRAYTON, Pro Se Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 09–398 C.**

United States Court of Federal Claims.

April 28, 2010.

Maurice Grayton, San Diego, CA, pro se.

Carrie A. Dunsmore, United States Department of Justice, with whom were Tony West, Assistant Attorney General, Jeanne E. Davidson, Director, Kirk T. Manhardt, Assistant Director, Washington, DC, for defendant.

1. The court granted plaintiff's request for leave to file a sur-reply, and afforded defendant the same opportunity.

2. The facts recited here are taken from plaintiff's complaint, an attachment to the complaint and

## OPINION

BUSH, Judge.

The court has before it defendant's motion to dismiss this suit pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims (RCFC). Defendant's motion was filed August 17, 2009, and has been fully briefed.[1] For the reasons set forth below, defendant's motion is granted.

## BACKGROUND[2]

On April 10, 2006, plaintiff provided a suggestion to the Social Security Administration (SSA), through the SSA website, that Supplemental Security Income (SSI) benefits should be delivered to recipients by debit card transaction rather than by paper check. Compl. at 3, 14. On June 2, 2006, the SSA responded that it would bring Mr. Grayton's suggestion to the attention of officials who oversee the SSI program and encouraged the submission of new ideas. *Id.* On June 10, 2006, Mr. Grayton submitted a proposal describing a pilot program offering SSI recipients point of sale access to their SSI benefits through debit cards. *Id.* n. 1. The SSA currently uses debit card technology in the delivery of benefits to recipients. *Id.* Ex. 1 at 2.

On August 14, 2008, plaintiff filed suit in the United States District Court for the Southern District of California, alleging, among other causes of action, that various government officials had misappropriated his debit card proposal and had failed to compensate him for his proposal. Compl. Ex. 1 at 1–2. On April 28, 2009, Mr. Grayton's lawsuit was dismissed without prejudice, primarily because he failed to respond to a motion to dismiss, and secondarily because he had not named the United States, rather than individual federal officials, as the defendant in that action. *Id.* Ex. 1 at 2–4. Plaintiff filed suit in the instant case on June 17, 2009. Plaintiff asserts that the complaint before this court "cures the past discrepancy

plaintiff's briefing, and are undisputed for the purposes of deciding this court's jurisdiction. Def.'s Mot. at 2 n. 1. The court makes no findings of fact in this opinion.

and serves as a Tort Cause of Action ... against the United States." *Id.* at 4.

Defendant timely filed a motion to dismiss the complaint. As Mr. Grayton admits in his opposition brief, the complaint before the court abounded with "various legal theories" which "complicated" the litigation of plaintiff's claims. Pl.'s Opp. at 2. Plaintiff concedes, for example, that certain of his demands for injunctive and declaratory relief are beyond this court's jurisdiction. *Id.* Plaintiff, in his opposition brief, appears to have abandoned most of the legal theories and citations to statutes that were briefly presented in the complaint in favor of an assertion that his suit in this court seeks just compensation for a taking of his property by the federal government. *Id.* at 1–8, 10. Plaintiff, in his sur-reply brief, attempts to identify the property interest that was taken by the government, Pl.'s Sur–Reply at 2–6, and looks to an Army incentive and awards program as a potential money-mandating source of law for his claim in this court, *id.* at 7–9.

The primary legal claim that plaintiff continues to advance and defend is a takings claim. In reference to his takings claim, plaintiff asserts that the taking of his debit card proposal occurred in furtherance of the Government Paperwork Elimination Act of 1998, 44 U.S.C. § 3504(a)(1)(B)( [vi] ) (2006). Pl.'s Opp. at 7–9. Plaintiff also relies, to some extent, on the concepts of patent rights and copyright infringement, as well as case-law concerning trade secrets. The court will focus this opinion on the legal theories which, despite the arguments raised by defendant, plaintiff apparently believes entitle him to "a remedy in support of the taking[s] allegation."[3] Pl.'s Sur–Reply at 10.

## DISCUSSION

### I. Standards of Review

 The court acknowledges that Mr. Grayton is proceeding *pro se,* and is "not expected to frame issues with the precision of a common law pleading." *Roche v. United States Postal Serv.,* 828 F.2d 1555, 1558 (Fed. Cir.1987). *Pro se* plaintiffs are entitled to a liberal construction of their pleadings. *See Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (requiring that allegations contained in a *pro se* complaint be held to "less stringent standards than formal pleadings drafted by lawyers"). Accordingly, the court has examined the complaint and briefs thoroughly and has attempted to discern all of plaintiff's legal arguments.

 In rendering a decision on a motion to dismiss for lack of subject matter jurisdiction pursuant to RCFC 12(b)(1), this court must presume all undisputed factual allegations to be true and construe all reasonable inferences in favor of the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *abrogated on other grounds by Harlow v. Fitzgerald,* 457 U.S. 800, 814–15, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Reynolds v. Army & Air Force Exch. Serv.,* 846 F.2d 746, 747 (Fed.Cir.1988). However, plaintiff bears the burden of establishing subject matter jurisdiction, *Alder Terrace, Inc. v. United States,* 161 F.3d 1372, 1377 (Fed.Cir.1998) (citing *McNutt v. Gen. Motors Acceptance Corp. of Ind.,* 298 U.S. 178, 189, 56 S.Ct. 780, 80 L.Ed. 1135 (1936)), and must do so by a preponderance of the evidence, *Reynolds,* 846 F.2d at 748 (citations omitted). If jurisdiction is found to be lacking, this court must dismiss the action. RCFC 12(h)(3).

 It is well-settled that a complaint should be dismissed under RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle him to a legal remedy." *Lindsay v. United States,* 295 F.3d 1252, 1257 (Fed. Cir.2002). When considering a motion to dismiss under this rule, "the allegations of the complaint should be construed favorably to the pleader." *Scheuer,* 416 U.S. at 236, 94 S.Ct. 1683. The court must also inquire whether the complaint meets the "plausibility

---

**3.** Although plaintiff did not formally amend his complaint to exclude abandoned legal theories, extensive discussion of the numerous legal theories and citations to statutes that plaintiff has failed to defend would be a waste of judicial resources. The court has carefully examined the operative facts alleged by plaintiff in an effort to discover viable claims within this court's jurisdiction and has found none.

standard" described by the United States Supreme Court, *i.e.*, whether it adequately states a claim and provides a "showing [of] any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 560–63, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (*Twombly*).

## II. Analysis

### A. Plaintiff's Apparently Abandoned Claims Not Within the Court's Jurisdiction

The Tucker Act delineates this court's jurisdiction. 28 U.S.C. § 1491 (2006). This statute "confers jurisdiction upon the Court of Federal Claims over the specified categories of actions brought against the United States...." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed.Cir.2005) (*en banc*) (citations omitted). These include claims "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

The Tucker Act concurrently "waives the Government's sovereign immunity for those actions." *Fisher*, 402 F.3d at 1172. The statute does not, however, create a substantive cause of action or right to recover money damages in the Court of Federal Claims. *Id.* "[T]o come within the jurisdictional reach and the waiver of the Tucker Act, a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.* (citations omitted). In other words, the source underlying the cause of action must be money-mandating, in that it " 'can fairly be interpreted as mandating compensation by the Federal Government....' " *United States v. Testan*, 424 U.S. 392, 400, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) (quoting *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 372 F.2d 1002, 1009 (1967) and citing *Mosca v.*

*United States*, 189 Ct.Cl. 283, 417 F.2d 1382, 1386 (1969)). If the provision relied upon is found to be money-mandating, the plaintiff need not rely upon a waiver of sovereign immunity beyond the Tucker Act. *Huston v. United States*, 956 F.2d 259, 261 (Fed.Cir. 1992) (citing *United States v. Mitchell*, 463 U.S. 206, 218, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983)). If, on the other hand, no money-mandating provision supports jurisdiction for a cause of action, this court must dismiss the suit. RCFC 12(h)(3).

The complaint before the court presents a straightforward factual scenario, but suffers from a disorganized and sometimes incoherent presentation of legal theories and citations to federal statutes and regulations. In general, Mr. Grayton asserts that he invented the debit card pilot program proposal, and that the United States has broken the law by using his invention without compensating him for it. Although this claim is stated and restated in various ways in the complaint, two dominant theories of liability emerge: violations of intellectual property laws and the commission of torts by various government officials. Plaintiff cites to both the Lanham Act, 15 U.S.C. § 1125 (2006), for "trademark dilution," Compl. at 8, and the Federal Tort Claims Act, 28 U.S.C. § 1346(b) (2006), apparently for fraud, misrepresentation and misappropriation, Compl. at 13.

As defendant correctly points out, neither of these statutes supports jurisdiction in this court.[4] Def.'s Mot. at 5–7. Similarly, plaintiff's due process claims, briefly alluded to in the complaint, are not within the jurisdiction of this court.[5] *Id.* at 8. Plaintiff's opposition brief does not contest defendant's assertion that there is no jurisdiction in this court for these claims. To the extent that plaintiff has not abandoned his trademark dilution, tort and due process claims, these claims must be dismissed for lack of jurisdiction. The court now turns to two additional legal theories advanced by plaintiff in the complaint, as well as other legal theo-

---

**4.** Neither trademark dilution nor tort claims fall within this court's jurisdiction. *d'Abrera v. United States*, 78 Fed.Cl. 51, 53 n. 5 (2007); *Block v. United States*, 66 Fed.Cl. 68, 72 (2005).

**5.** Due process claims cannot be entertained by this court. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995).

ries that plaintiff argues in his opposition brief and his sur-reply.

### B. Contract Claim

#### 1. Contract Disputes Act of 1978

■■■■■■ Plaintiff insists that he entered into a contract with the United States, by offering his debit card proposal in return for "rewards" and "recognition." Compl. at 5–6. Plaintiff apparently relies on the Contract Disputes Act of 1978, 41 U.S.C. § 601 et seq. (2006) (CDA), as one jurisdictional basis for his breach of contract claim. Compl. at 2, 7. As a threshold matter, plaintiff has not explained how his communication with the SSA implicates the CDA. Plaintiff briefly cites to two sections of the CDA in the complaint, and makes no mention of CDA jurisdiction in either his opposition brief or his sur-reply. See Compl. at 2, 7 (citing 41 U.S.C. §§ 605, 609(a)(1)). Because plaintiff has not attempted to show how his submission of a suggestion to the SSA created a procurement contract subject to the CDA, see 41 U.S.C. § 602(a) (stating that the CDA "applies to any express or implied contract ... entered into by an executive agency for—(1) the procurement of property, other than real property in being; [or] (2) the procurement of services"), the court finds that plaintiff has not met his burden to show jurisdiction under the CDA for plaintiff's suit.[6]

#### 2. Implied–in–Fact Contract

■■■■ Plaintiff also argues that an implied contract was formed when he submitted his suggestion to the SSA. Compl. at 2, 15. As defendant correctly points out, to the extent that plaintiff asserts a contract claim based on a quasi-contract or quantum meruit theory of contract liability, this court does not have jurisdiction over such contracts that are merely implied in law. See Def.'s Mot. at 9–10; see also Russell Corp. v. United States, 210 Ct.Cl. 596, 537 F.2d 474, 482 (1976) ("This court, of course, has no jurisdiction to

render judgment against the United States based upon a contract implied in law.") (citations omitted). On the other hand, this court does have Tucker Act jurisdiction over claims against the United States for breach of implied-in-fact contracts. See, e.g., Hanlin v. United States, 214 F.3d 1319, 1321 (Fed.Cir. 2000) (Hanlin I) (stating that when a "complaint presents a non-frivolous allegation of the existence of an implied-in-fact contract[,] this is sufficient to confer jurisdiction in the Court of Federal Claims under 28 U.S.C. § 1491(a)(1)" (citing Gould v. United States, 67 F.3d 925, 929 (Fed.Cir.1995))).

■■■ A non-frivolous jurisdictional allegation is one which asserts that the plaintiff is "within the class of plaintiffs entitled to recover under the money-mandating source[—][t]here is no further jurisdictional requirement that the court determine whether the additional allegations of the complaint state a nonfrivolous claim on the merits." Jan's Helicopter Serv., Inc. v. Fed. Aviation Admin., 525 F.3d 1299, 1309 (Fed.Cir.2008). Potential money-mandating sources for Tucker Act claims in this court include certain express and implied contracts, statutes, regulations and constitutional provisions. 28 U.S.C. § 1491(a)(1); see also McNabb v. United States, 54 Fed.Cl. 759, 767 & n. 2 (2002) ("Plaintiffs' assertion of contract claims suffices as a money mandating basis for jurisdiction in this court." (citing Trauma Serv. Group v. United States, 104 F.3d 1321, 1325 (Fed.Cir.1997))). Thus, to the extent that plaintiff suggests that a meeting of the minds created an implied-in-fact contract between Mr. Grayton and the SSA, Compl. at 15, he has properly alleged jurisdiction in this court for his contract claim.

■■■■■ The elements of proof required to establish the existence of an implied-in-fact contract have been described by the United States Court of Appeals for the Federal Circuit:

> subject to the CDA, then the court would be without jurisdiction to hear the claim because plaintiffs did not comply with certain jurisdictional requirements, i.e., submission of a claim for decision by a contracting officer. . . .").

6. Even if plaintiff had convinced the court that a procurement contract was at issue here, the CDA would not allow this court to consider a claim that had not first been submitted to a contracting officer for a final decision. See Lucas v. United States, 25 Cl.Ct. 298, 306 (1992) ("If the claim is

Plaintiff has the burden to prove the existence of an implied-in-fact contract. *Pac. Gas & Elec. v. United States*, 3 Cl.Ct. 329, 339 (1983), *aff'd*, 738 F.2d 452 (Fed. Cir.1984) (table). An implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) "actual authority" on the part of the government's representative to bind the government in contract. *City of Cincinnati v. United States*, 153 F.3d 1375, 1377 (Fed.Cir.1998). Thus, the requirements for an implied-in-fact contract are the same as for an express contract; only the nature of the evidence differs. An implied-in-fact contract is one founded upon a meeting of minds and "is inferred, as a fact, from the conduct of the parties showing, in the light of the surrounding circumstances, their tacit understanding." *Balt. & Ohio R.R. v. United States*, 261 U.S. 592, 597, 58 Ct.Cl. 709, 43 S.Ct. 425, 67 L.Ed. 816 (1923).

*Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed.Cir.2003) (*Hanlin II*).

■ Unfortunately for plaintiff, the allegations of fact in the complaint do not plausibly support the existence of any of the four elements of an implied-in-fact contract. *See Twombly*, 550 U.S. at 560, 127 S.Ct. 1955 (noting "the requirement of plausibility and the need for something more than merely parallel behavior" in the antitrust litigation context). Here, the communications alleged to have occurred between the SSA and Mr. Grayton do not indicate a mutual intent to compensate Mr. Grayton for his suggestion, do not show that consideration was promised or paid to Mr. Grayton, do not show that the SSA unambiguously offered Mr. Grayton compensation, or that the sender of the email to Mr. Grayton had any authority to bind the United States in a contract. On these facts, construed in favor of plaintiff, the existence of an implied-in-fact contract is not plausible.[7] *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955)).

Plaintiff's implied-in-fact contract claim appears to be founded on the SSA's alleged promise to not reveal or use Mr. Grayton's suggestion without compensating him for it. According to plaintiff, the United States "breached the [implied contract] by reneging on the promises to Grayton that his expenditures of the proposal constituted a financial 'stake,' either reward or recognition, as an investment into the future policy, plan or procedures of the SSA." Compl. at 5. Mr. Grayton asserts that one of the terms of this alleged implied-in-fact contract was for the SSA to keep his "trade secret" confidential. *Id.* at 21. Plaintiff relies on *Airborne Data, Inc. v. United States*, 702 F.2d 1350 (Fed.Cir. 1983), as support for his implied-in-fact contract theory.

Plaintiff's reliance on *Airborne Data* is misplaced. That case holds that a contract implied-in-fact may indeed "arise[ ] from submission of trade secrets [to a federal agency] under a restrictive legend pursuant to a regulation." *Airborne Data*, 702 F.2d at 1353. In that scenario, the government is bound by contract to obey regulatory restrictions on the use of trade secrets identified as such and may be liable for breach of that contract term. *Id.* at 1361.

Mr. Grayton's submission of a suggestion to the SSA does not, however, fall within the holding of *Airborne Data*. Plaintiff does not allege that he placed a restrictive legend on his proposal, although his complaint sets forth the language of such a legend. *See* Compl. at 19. Indeed, plaintiff's complaint and opposition brief can only be read to concede that Mr. Grayton failed to place a restrictive legend on the proposal he sent to

---

7. The court acknowledges that Mr. Grayton is proceeding *pro se* and his pleadings are to be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007). The court does not dismiss plaintiff's complaint for lack of detail or content. Instead, the court

must dismiss Mr. Grayton's claims because the events reported in the complaint, assumed to be true, cannot plausibly be construed to give rise to an implied-in-fact contract with the United States. *Hanlin II*, 316 F.3d at 1328.

the SSA. *See* Compl. at 18 (not contesting an assertion in a prior proceeding that plaintiff "did not mark his proposal with a legend to identify any proprietary information"); Pl.'s Opp. at 3 (noting and not refuting defendant's assertion that Mr. Grayton had "fail[ed] to attach any 'legends'" to the proposal he sent to the SSA); *see also* Compl. at 20 (positing that even suggestions submitted without "proprietary information" legends should be treated as confidential by the SSA).

█ Thus, plaintiff's assertion that his submission of a "trade secret," unaccompanied by any restrictive legend, creates the contractual obligation discussed in *Airborne Data* fails, because the facts he alleges in support of that claim are fundamentally distinguishable from those discussed in *Airborne Data.* Subsequent precedent holds that a federal agency is under no obligation to keep unsolicited proposals confidential, when restrictive legends that could identify the proprietary information therein are inadequate or missing. *See, e.g., Xerxe Group, Inc. v. United States,* 278 F.3d 1357, 1360 (Fed.Cir.2002) (holding that the plaintiff's "failure to identify and clearly demarcate what it considered restricted data is fatal to its claim"); *Block v. United States,* 66 Fed. Cl. 68, 74 (2005) (holding that "the plaintiff's failure here to identify any proprietary information in his unsolicited Joint Proposal requires dismissal of the plaintiff's implied-in-fact contract claim for protection of his alleged proprietary information"). Under the facts alleged in the complaint, the SSA had no contractual duty to keep Mr. Grayton's proposal confidential.

Plaintiff also contends that under the terms of the alleged implied-in-fact contract the government agreed to furnish him "rewards [and] recognition."[8] Compl. at 6. As stated above, the facts alleged by plaintiff do not plausibly support a meeting of minds between the SSA and Mr. Grayton as to a payment obligation imposed on the United States. In similar cases, the Court of Claims, whose precedent is binding on this court, has refused to consider such claims. *See, e.g., Horner v. United States,* 114 Ct.Cl. 612, 86 F.Supp. 132, 133 (1949) (dismissing a case where "[n]o one having authority to bind the United States by contract[ ] promised to pay plaintiff compensation for the information submitted or for the use of the unpatented devices described therein"). The following discussion of an alleged implied-in-fact contract with the federal government as to payment for an invention is instructive:

> The facts alleged by plaintiff, as distinguished from conclusions, would not, if proved, establish his right to recover upon a contract express or implied in fact. The petition does not state the name or position of the 'officers, agents, or servants' of the Government with whom he had negotiations concerning his alleged invention, and no facts are alleged to show that such officers or agents, or any of them, had authority to bind the Government or to obligate it to pay plaintiff compensation in the event some agency of the Government used his unpatented plan or method for camouflaging parachutes. The allegations do not indicate an agreement, express or implied in fact, to use plaintiff's device and to pay him for such use, but indicate only that plaintiff had some negotiation with someone not named, concerning the nature and character of his alleged invention and its possible use by the Government.
>
> . . . .
>
> Since plaintiff has not alleged facts sufficient to show that he had a contract with the Government within the jurisdiction of this court, a use by the Government of his

---

8. As defendant points out, plaintiff's reference to "The Army Ideas for Excellence Program," Pl.'s Sur–Reply at 7, has no rational applicability to the facts alleged in the complaint. Def.'s Sur–Reply at 3. The court also notes that 5 C.F.R. § 451.104 (2010), an employee performance award regulation cited by plaintiff in his surreply brief, does not aid Mr. Grayton's cause. This regulation has never been held to be a money-mandating source of law supporting jurisdiction in this court, *cf. Bullock v. Dep't of Air Force,* 93 M.S.P.R. 217, 220 (2003) ("The [performance award] law does not mandate the payment of a performance award[ ]; rather, it leaves that matter to the agency's discretion.") (citations omitted), and, in any case, the facts alleged by plaintiff do not plausibly state a claim upon which relief could be granted pursuant to this regulation.

unpatented device or method would not constitute the basis for a suit.... *Fulmer v. United States*, 111 Ct.Cl. 591, 77 F.Supp. 927, 929–30 (1948) (citations and footnote omitted). This court must follow precedent and dismiss plaintiff's implied-in-fact contract claim for failure to state a claim upon which relief could be granted.[9]

### C. Takings Claim

■■■■ As a threshold inquiry into a takings claim, the court must inquire whether the plaintiff possessed a property interest which could have been taken by government action. *See, e.g., Am. Pelagic Fishing Co. v. United States*, 379 F.3d 1363, 1372 (Fed.Cir. 2004) ("First, as a threshold matter, the court must determine whether the claimant has established a property interest for purposes of the Fifth Amendment.") (citation omitted); *Longshore v. United States*, 77 F.3d 440, 443 (Fed.Cir.1996) ("The definitive issue with respect to appellant's takings claim, however, is whether appellant had a property interest that was taken from him by government action."). That is because "only persons with a valid property interest at the time of the taking are entitled to compensation." *Wyatt v. United States*, 271 F.3d 1090, 1096 (Fed.Cir.2001) (citations omitted). Throughout the complaint, his opposition brief and his sur-reply, Mr. Grayton repeatedly asserts that the proposal he submitted to the SSA was his property. *See* Compl. at 5 (referring to "ownership rights" and "inventorship"); Pl.'s Opp. at 3 (referring to "his proprietary interest"); Pl.'s Sur–Reply

at 6 (referring to "copyright" and to "[t]rade [s]ecret"). Unfortunately for plaintiff, the alleged facts in the complaint do not plausibly show that Mr. Grayton owned a cognizable property interest in the ideas he submitted to the SSA.

■■■■ Plaintiff concedes that he did not secure a patent for his ideas.[10] *See* Pl.'s Sur–Reply at 6 ("Plaintiff Grayton was unable to obtain a patent...."). Plaintiff also concedes that he did not secure a copyright for his ideas through any formal means, *id.* at 1, although he does appear to assert that his ideas are nonetheless protected by copyright law, *id.* at 6 (asserting that "a copyright exists from the moment the work is fixed in a tangible medium of expression") (citation omitted).[11] Plaintiff relies principally, it appears, on the theory that Mr. Grayton possessed a trade secret that was taken by the government without just compensation. *See* Compl. at 5 (stating that "Grayton was under the impression that his idea was being kept as a 'trade secret' "), 14 (stating that the government "had a duty of care not to disclose his trade secret"), 22 (referring to the "misappropriation of Plaintiff['']s trade secret"); Pl.'s Opp. at 5–6 (asserting that *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984), establishes this court's jurisdiction over the regulatory taking of a trade secret); Pl.'s Sur–Reply at 6 (stating that "an idea is treated as property in Trade Secret Law").

9. The court need not consider, for its implied-in-fact contract analysis, whether Mr. Grayton's proposal was indeed a trade secret or otherwise protectable under the law. The court notes, however, that the unrestricted sharing of an idea with the government may undermine an implied-in-fact contract theory seeking payment for that idea. *See Sterner v. United States*, 193 Ct.Cl. 517, 434 F.2d 656, 657 (1970) (dismissing an implied-in-fact contract claim, in part because "[e]ven if it is assumed that plaintiff had some protectable legal interest in the concepts he has espoused, he has placed these ideas in the public domain by publishing them [and] the use of the ideas is unrestricted" (citing *Baker v. Selden*, 101 U.S. 99, 25 L.Ed. 841 (1879))).

10. The complaint could be read to allude to patent property rights. *See* Compl. at 5 (citing to 35 U.S.C. § 261 (2006), a statute discussing own-

ership of "[a]pplications for patent, patents, or any interest therein"). Even if Mr. Grayton had obtained patent rights cognizable under the law, "the Court of Claims lack[s] Tucker Act jurisdiction over [patent] infringement under a takings theory." *Zoltek Corp. v. United States*, 442 F.3d 1345, 1351 (Fed.Cir.2006).

11. The court will discuss *infra* any copyright infringement claim that plaintiff may have attempted to present to this court. Copyright infringement is a tort, not a taking, and cannot be prosecuted as a taking under the Tucker Act. *See Curtis v. United States*, 144 Ct.Cl. 194, 168 F.Supp. 213, 216 (1958) ("Furthermore, were we to hold that plaintiff had a property right which the Government used without consent of plaintiff, his cause of action would be for infringement of the copyright, a tort....").

Plaintiff acknowledges that "it may be true that ['][h]owever good and valuable an idea, plan[,] scheme, or system is, the moment it is disclosed to the public without the protection of a patent, it becomes public property.... [']" Pl.'s Sur–Reply at 6 (quoting *Affiliated Enters. v. Gruber*, 86 F.2d 958, 961 (1st Cir.1936)). The general rule holds that "[i]f an individual discloses his trade secret to others who are under no obligation to protect the confidentiality of the information, or otherwise publicly discloses the secret, his property right is extinguished." *Ruckelshaus*, 467 U.S. at 1002, 104 S.Ct. 2862 (citations omitted); *see Sterner v. United States*, 193 Ct.Cl. 517, 434 F.2d 656, 657 (1970) (stating that "[e]ven if it is assumed that plaintiff had some protectable legal interest in the concepts he has espoused, he has placed these ideas in the public domain by publishing them [and] the use of the ideas is unrestricted" (citing *Baker v. Selden*, 101 U.S. 99, 25 L.Ed. 841 (1879))). Here, as discussed *supra*, the SSA was under no obligation to keep plaintiff's proposal confidential. Even if Mr. Grayton's ideas constituted a trade secret before he submitted his proposal to the SSA, any property interest he possessed in those ideas was destroyed when he shared those ideas without reservation with the SSA.[12]

> As this court stated in a similar case,
>
> In order to have established a protected property interest in his Joint Proposal, the plaintiff was obligated to protect the information from disclosure to others. The plaintiff was therefore obligated to mark his proposal "confidential" or "trade secret." His failure to place any restrictive markings on his proposal before submitting it to NASA personnel or the FAA is fatal to his taking claim. The plaintiff did not take any of the minimal steps necessary to protect his alleged trade secrets

from disclosure. He did not mark the proposal or seek any agreement for confidentiality. Because he disclosed his alleged trade secrets to others, "who were under no obligation to protect the confidentiality of the information," at both NASA and the FAA, the plaintiff lost any property interest he may have held.

*Ruckelshaus*, 467 U.S. at 1002, 104 S.Ct. 2862, 81 L.Ed.2d 815. If there is no property interest there can be no taking.

*Block*, 66 Fed.Cl. at 75. The complaint has not identified a protected property interest in Mr. Grayton's ideas, and the court is aware of none that would have been created in these circumstances. Because no cognizable property interest has been identified which could have been taken by government action, the complaint fails to state a takings claim upon which relief could be granted.[13]

**D. Copyright Infringement Claim**

Finally, the court turns to any copyright infringement claim which plaintiff might have attempted to present in his complaint.[14] "The Court of Federal Claims has exclusive jurisdiction to entertain copyright claims against the United States pursuant to 28 U.S.C. § 1498(b) (200[6])." *Jennette v. United States*, 77 Fed Cl. 132, 136 (2007). As a prerequisite to filing a copyright infringement claim, however, a plaintiff must ordinarily apply for copyright registration, and must have either registered a copyright or have been denied copyright registration, before bringing a copyright claim against the United States. *See* 17 U.S.C. § 411(a) (2006) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title. In any case, however, where the deposit, application, and fee required for registration have been delivered

12. The court continues to accord all favorable inferences to the facts alleged by plaintiff. The court need not decide whether Mr. Grayton's ideas were indeed original and protectable as a trade secret.

13. The court also need not reach plaintiff's arguments concerning the Government Paperwork Elimination Act of 1998, 44 U.S.C. § 3504(a)(1)(B)(vi) (2006), which apparently fo-

cus on the nature of the government action at issue in his takings claim. *See American Pelagic*, 379 F.3d at 1372 ("If the claimant fails to demonstrate the existence of a legally cognizable property interest, the court[']s task is at an end.") (citation omitted).

14. Plaintiff's reliance on copyright law is largely evidenced in his sur-reply brief.

to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights."); *Reed Elsevier, Inc. v. Muchnick,* —— U.S. ——, 130 S.Ct. 1237, 1242, 176 L.Ed.2d 17 (2010) (stating that § 411(a) "establishes a condition—copyright registration—that plaintiffs ordinarily must satisfy before filing an infringement claim and invoking the Act's remedial provisions").

 Plaintiff has not alleged that he preregistered or registered a copyright of his proposal, or that registration of his copyright was denied. Pl.'s Sur–Reply at 1 (stating that "the plaintiff, in haste, submitted his respective writing to the government before securing a patent or copyright"), 4 (noting "Plaintiff's . . . failure to protect the business plan by patent [ ]or a file stamp copyright emblem"). Furthermore, on the facts alleged by plaintiff, none of the exceptions to copyright registration apply to permit a copyright infringement suit to go forward in this court. *See Reed Elsevier,* 130 S.Ct. at 1246 (describing the exceptions which would permit the holder of an unregistered copyright to pursue an infringement suit in a federal court). If plaintiff indeed asserts that the United States infringed his copyright, § 411(a) bars his suit in this court. Thus, the complaint fails to state a copyright infringement claim upon which relief could be granted.

## CONCLUSION

For the foregoing reasons, plaintiff's claims must be dismissed. Accordingly, it is hereby **ORDERED** that:

(1) Defendant's Motion to Dismiss, filed August 17, 2009, is **GRANTED;**

(2) The Clerk's Office is directed to **ENTER** final judgment in favor of defendant **DISMISSING** the complaint, **without prejudice,** as to plaintiff's trademark dilution, tort, due process and CDA claims, and **with prejudice** as to plaintiff's implied-in-fact contract, takings and copyright infringement claims; and

(3) Each party shall bear its own costs.